Argued and submitted December 21, 1995, convictions reversed in part, affirmed in part, and remanded for resentencing July 24, 1996

## STATE OF OREGON,
*Respondent,*

*v.*

## DOUGLAS KENNETH DAUGAARD,
*Appellant.*

(93-0366; CA A81750)

921 P2d 975

Eric R. Johansen, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender. On the supplement brief was Douglas K. Daugaard, *pro se*.

Ann F. Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

In a trial to the court, defendant was convicted of five counts of first-degree sodomy, six counts of first-degree sexual abuse, one count of second-degree sodomy, five counts of compelling prostitution, 13 counts of furnishing obscene materials to a minor and three counts of prostitution.

Multnomah County Sheriff's Deputy Gates drove to a Mini-Mart in southeast Portland in response to a dispatch report of an alleged sexual crime. When he arrived, he met with a complainant. The complainant told him that complainant's son and nephew had told complainant that they had been sexually abused by defendant on several occasions and that defendant had taken pictures of them. Complainant explained that defendant was expected to arrive shortly at the Mini-Mart because complainant's son had arranged to meet him there. Complainant told Gates that defendant was a middle aged, heavy set, white male. He also told Gates that defendant drove an old, brown van. Shortly after Gates arrived, defendant drove up in a brown van.

Gates approached the van in his patrol car. As he did, the van pulled out of the parking lot. Defendant made a turn, but failed to signal the turn. Gates turned on the overhead lights of his patrol car and pulled the van over. Defendant gave his license to Gates. Gates noticed a young child sitting in the passenger seat. Gates ran a check on defendant's license and discovered that it had been suspended for a driving-while-uninsured infraction.

Gates asked defendant to get out of the van. Gates spoke to the child, who told Gates that defendant lived on his family's property. Gates decided that defendant matched the description given by complainant. He told defendant that he was going to take him to the sheriff's office because detectives wanted to speak with him, but he did not tell defendant anything more. Gates cited defendant for driving while suspended, driving without insurance, and failure to signal a turn. He had defendant and the child get into the rear seat of his patrol car and took them to the sheriff's office. Gates stated that defendant was very cooperative.

Once at the sheriff's office, defendant met with Detective Tolliver. Tolliver told defendant that he was free to leave, but that he would appreciate it if defendant would wait while Tolliver spoke with three boys. Defendant agreed.

Tolliver spoke to complainant's son and nephew and with the child who had been in the van with defendant. All three boys admitted that defendant had engaged in sexual acts with them. They told Tolliver that defendant would take them out to shopping malls and buy them things. They stated that defendant would also take them back to his trailer and engage in sexual acts with them.

After speaking with the boys, Tolliver spoke again with defendant. At that time, Tolliver told defendant that he was under arrest and advised him of his rights. Defendant did not request an attorney and agreed to speak with Tolliver. Tolliver told him that he was under arrest for sexually abusing the three boys. Defendant denied abusing the boys but admitted that he had a large collection of pornographic videos. Tolliver requested permission to search defendant's trailer and van, and defendant agreed. Defendant signed two consent forms to allow the police to conduct the searches.

Defendant accompanied the officers to his trailer and was present while they searched it. Defendant showed the officers where the videotapes were. Defendant never voiced any objections to the search.

Before trial, defendant made a motion to suppress the videotapes seized from his trailer. Defendant claimed that Gates lacked probable cause to arrest him and, as a result, that his consent to search his trailer was invalid. Defendant does not argue that his consent was involuntary. Rather, he argues only that officers would not have had an opportunity to request consent absent the illegal arrest. The state argues that Gates had probable cause to arrest defendant for sexual offenses. It further argues that, even if Gates did not have probable cause to arrest defendant, any prejudice was cured when Tolliver told defendant that he was free to go. Defendant could have left had he so desired, but he agreed to wait and speak to Tolliver. Once Tolliver had spoken to the boys, he arrested defendant and advised him of his

rights. The state contends that Tolliver's actions were sufficient to cure any harm caused by Gates' actions.

■ To determine whether evidence seized during the search of defendant's trailer should have been suppressed, we must determine whether defendant's consent to search was obtained in violation of his Article I, section 9, right against unreasonable search or seizure. Assuming without deciding that Gates lacked probable cause to arrest defendant and that the arrest was, therefore, unlawful, we conclude that defendant's consent was not obtained by exploitation of the allegedly unlawful conduct.

■ This case does not present the issue whether defendant's consent was voluntary—he makes no claim that it was not. The question, rather, is whether the consent was obtained by exploitation of a purportedly unlawful arrest. Where, as here, there is no claim that unlawful conduct affected the voluntariness of a defendant's consent in order to establish that the consent was invalid, a defendant must show that the police exploited their prior unlawful conduct to obtain the consent. The Supreme Court has held that "[m]ere physical presence as a result of prior unlawful conduct does not constitute exploitation of that conduct." *State v. Rodriguez*, 317 Or 27, 40, 854 P2d 399 (1993). The simple fact that, but for the arrest, the defendant would not have been in the presence of the police is not enough to render evidence discovered in a subsequent consent search inadmissible. *Id.* at 39-40. That is all defendant has shown here. Additionally, defendant's argument that the arrest violated his Fourth Amendment right to be free from unreasonable seizure lacks merit. Defendant fails to establish how his statements to the police were the product of his earlier seizure. *See Wong Sun v. United States*, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

In his second assignment of error, defendant argues that the trial court erred by refusing to grant his motion for judgment of acquittal on many of the counts.[1] Defendant points out that the indictment alleges that the acts occurred

---

[1] The trial court did grant the motion for judgment of acquittal with respect to 24 of the 57 counts in the indictment.

between September and December 1992. The victims testified, however, that some of the acts occurred between February and December 1992. Defendant argues that he was entitled to be acquitted of any charge in which the victim testified that the charged conduct could have occurred at a time other than between September and December 1992.

■     Under the circumstances of this case, the date of the crimes charged in the indictment is not a material element of any of them. *See, e.g., State v. Long*, 320 Or 361, 367-69, 885 P2d 696 (1994). Defendant argues otherwise, but his arguments are unavailing.[2]

Because the dates were not a material element, the state was not required to prove that the conduct occurred within the dates specified in the indictment in order to secure convictions. There was evidence in the record on which to find beyond a reasonable doubt that defendant committed the crimes alleged in the relevant counts of the indictment. It follows, therefore, that the trial court did not err in denying the motion for judgment of acquittal on those counts.

■     Defendant argues that the trial court erred in imposing departure sentences. The court imposed departure sentences on four of defendant's convictions. The court cited as reasons for those sentences the victims' particular vulnerability, permanent injury to the victims, and persistent involvement of defendant in similar offenses. Furthermore, the court found that each departure factor on its own was sufficient to support the imposition of departure sentences. *See State v. Williams*, 133 Or App 191, 891 P2d 3, *rev den* 321 Or 512 (1995). Thus, if any one of the factors is valid, the sentence is proper. *Id.* at 195. In the presentence report, there is evidence that the victims were permanently injured by defendant's actions. That evidence is sufficient to support the trial court's finding. The court did not err in imposing departure sentences.

---

[2] Contrary to his arguments, the variance between the dates in the indictment and those to which the victims testified did not give the factfinder the opportunity to convict him for conduct that was different from that alleged in the indictment. *Compare State v. Sohn*, 107 Or App 147, 810 P2d 1337 (1991). Furthermore, defendant does not argue that the variance prejudiced his ability to defend against the charges.

■ Defendant assigns error to his 13 convictions for furnishing obscene materials to a minor. He argues that the statute on which those convictions are based, ORS 167.065(1)(a), is unconstitutional. We so held in *State v. Maynard*, 138 Or App 647, 656, 910 P2d 1115 (1996). Because the error is apparent on the face of the record and substantially prejudiced defendant, we exercise our discretion to review it. ORAP 5.45(2); *see also State v. Graham*, 125 Or App 516, 519, 865 P2d 490 (1993). Those convictions are reversed.

■ Next, defendant argues that the trial court erred in ordering that he is ineligible for good time credit on any of his convictions. The trial court held that all of defendant's convictions are subject to ORS 137.635. The state concedes that the trial court erred in doing that, and we have previously held that an error of that kind is an error that is apparent on the face of the record. *Id.* Accordingly, we exercise our discretion to review the error and hold that the court erred in making that determination.

Because the trial court erred in imposing part of the sentence, we must remand the entire case for resentencing. ORS 133.222(5). The remainder of defendant's assignments of error do not require discussion.

Convictions for furnishing obscene materials to a minor reversed; all other convictions affirmed; remanded for resentencing.