Jimmie Lee CUSTER, Petitioner–Appellant,

v.

Jean HILL, Superintendent, Eastern Oregon Correctional Institution, Respondent–Appellee.

No. 02–36038.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2003.

Filed Aug. 6, 2004.

Donnal S. Mixon, Assistant Federal Public Defender, Medford, OR, for the petitioner-appellant.

Timothy A. Sylwester, Assistant Attorney General, Salem, OR, for the respondent-appellee.

Before ALARCON, FERGUSON, and RAWLINSON, Circuit Judges.

Opinion by Judge RAWLINSON; Dissent by Judge FERGUSON.

RAWLINSON, Circuit Judge.

Jimmie Lee Custer appeals the District Court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus challenging his conviction for sodomy in the first degree. Custer's claim that the Oregon court violated his rights under the Fifth Amendment fails. Custer was not subjected to double jeopardy when Oregon prosecuted Custer for engaging in sodomy with his stepson between November 1, 1986 and June 19, 1987, after Custer was acquitted at a prior trial charging him with engaging in sodomy on June 20, 1987, because Custer was tried for *different offenses* that occurred at *different times*. Custer's petition that his counsel was ineffective at trial for abandoning a double jeopardy claim

and failing to raise it on appeal fails because Custer did not fairly present the ineffective assistance of counsel claim to the Oregon Supreme Court, and no cause exists to excuse the procedural default.

## I. BACKGROUND/PROCEDURAL HISTORY

### A. The First Trial

On September 17, 1987, Custer was charged by indictment with sodomy in the first degree by the State of Oregon. The indictment alleged that Custer, "on or about June 20, 1987, in Marion County, Oregon, did then and there unlawfully, feloniously and knowingly engage in deviate sexual intercourse" with J.,[1] Custer's stepson.

On February 2, 1988, the case came to trial. In his opening statement, the prosecutor told the jury that J. "heard his stepfather coming into the room, and you will hear from the evidence that this was not the first time he had heard his stepfather coming, and he had some anticipation of what was happening." However, when the prosecutor called the victim to the witness stand, the victim failed to answer questions about statements he had made to relatives and state officials regarding the charged conduct, or about the charged conduct itself. The trial judge entered an order of dismissal due to insufficient evidence on February 19, 1988.

### B. The Second Trial

Nearly three years later, on October 5, 1990, Custer was again indicted on a charge of sodomy in the first degree. However, the second indictment referenced different dates; it alleged that Custer "on or between November 1, 1986, and

---

1. We refer to the victim, Custer's stepson, as "J." or "the victim," because the victim was a child when the crime occurred.

June 19, 1987," engaged in "deviate sexual intercourse" with J. The second indictment encompassed dates that preceded the June 20, 1987 date specified in the first indictment.

On August 18, 1992, the second trial commenced. J., who was then nineteen years old, testified that he had been sexually abused and sodomized by Custer over a period of six years.[2] The jury convicted Custer of first degree sodomy, and Custer received a twenty-year sentence.

Custer directly appealed his conviction and sentence from the second trial on a basis not relevant to this appeal. The Oregon Court of Appeals affirmed Custer's conviction and sentence without opinion. *State v. Custer*, 124 Or.App. 438, 865 P.2d 1339 (1993). Custer did not petition for review by the Oregon Supreme Court.

## C. The Petition for Post–Conviction Relief

Custer's petition for post-conviction relief asserted that the trial court "failed to dismiss the charges against Petitioner on the grounds of Former Jeopardy and Double Jeopardy" and "unlawfully allowed prosecution of Petitioner twice for the same charge in violation of the United States Constitution and 5th Amendment ..." The petition also alleged that "Petitioner was denied adequate assistance of counsel under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States ... in that defense counsel failed to ... [p]roperly preserve issues regarding the prior dismissal for lack of evidence five years earlier regarding the same charge and evidence constituting Double Jeopardy ..."

Holding that the two prosecutions were not part of the same criminal episode, the post-conviction court rejected Custer's claims and denied relief. The Oregon Court of Appeals affirmed, and the Oregon Supreme Court denied Custer's petition for review.

## D. The Federal Habeas Petition

In his federal habeas petition, Custer sought relief on the bases that Oregon violated his Fifth Amendment rights when the state prosecuted him twice for the same charge, and that his Fifth, Sixth, and Fourteenth Amendment rights were violated when his trial counsel failed to object to Custer's second prosecution.

The district court found that Custer had preserved his federal double jeopardy claim, but that the claim was without merit.[3] The district court determined that Custer's ineffective assistance of counsel claim was procedurally defaulted because it was not presented to the Oregon Supreme Court. The district court declined to consider whether cause and prejudice excused this procedural default, because the court considered the underlying double jeopardy claim to be without merit.

Custer now appeals the determinations that he was not subjected to double jeopardy in violation of the Fifth Amendment, and that his ineffective assistance of counsel claim was procedurally defaulted. In the alternative, Custer contends that cause and prejudice excuse any procedural default.

## II. STANDARD OF REVIEW

■ We review *de novo* the district court's denial of a habeas corpus petition.

---

**2.** Custer's presentence report contains the following statement from J.: "[T]he first time I went through the court process, I was scared, and couldn't answer the questions. So I couldn't go through with it before. However, now I can go through with it ..."

**3.** The district court adopted the Magistrate Judge's Findings and Recommendations.

*Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir.2003). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provisions are applicable, since Custer filed his petition after AEDPA's effective date. *See id.*

▉ Habeas relief is not warranted unless we conclude that the state appellate court's[4] "adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." *Id.* (citation and internal quotation marks omitted). "A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Id.* (citation omitted). "A state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation, internal quotation marks, and alteration omitted).

## III. DISCUSSION

### A. The Double Jeopardy Claim

▉ The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Accordingly, for Custer to prevail on his double jeopardy claim, he must demonstrate that, under clearly established Federal law, he was "subject for the same offence" at both his first and second trials.

Relying on *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), Custer asserts that the state appellate court's decision upholding his conviction was contrary to clearly established federal law. He contends that under clearly established federal law, the 1988 dismissal of the charge that he engaged in sodomy on June 20, 1987 prohibited the subsequent 1992 prosecution of sodomy that occurred between November 1, 1986, and June 19, 1987.

In *Custer v. Baldwin,* 163 Or.App. 60, 986 P.2d 1203 (1999), the Oregon Court of Appeals determined that Custer's second trial did not violate his former jeopardy[5] rights under the Oregon Constitution because Custer's acts of sodomy against J. were not all part of the "same criminal episode" and consequently were not required to be prosecuted together. *Custer,* 163 Or.App. at 68–69, 986 P.2d 1203.

▉ "The Double Jeopardy Clause protects defendants against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Turner v. Calderon,* 281 F.3d 851, 889 (9th Cir.2002) (citation and internal quotation marks omitted). "Such protections are intended to insure that the State with all its resources and power [is] not allowed to make repeated attempts to convict an individual for an alleged offense[.]" *Id.* (citation, internal quotation marks, and alteration omitted).

---

4. Because the Oregon Supreme Court denied review without comment, we review the Oregon Court of Appeals's decision on habeas review as the last reasoned state court decision. *See Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000).

5. The Oregon Court of Appeals used the term "former jeopardy" throughout its opinion because "[Oregon Revised Statutes] Chapters 135 and 131 use the phrase 'former jeopardy' in lieu of 'double jeopardy.'" *Custer,* 163 Or.App. at 63 n. 3, 986 P.2d 1203.

However, Oregon indicted and prosecuted Custer for *two different incidences* of sexual abuse: the first trial was based upon the single-count indictment charging that Custer committed sodomy on June 20, 1987, and the second trial was predicated upon acts of sodomy committed between November 1, 1986 and June 19, 1987. The two prosecutions were based on indictments that alleged different criminal episodes occurring at different times.

The evidence presented at the two trials supports the Oregon Court of Appeals's determination that the state did not prosecute Custer twice for the same criminal episode. At the first trial, the state provided evidence in an attempt to prove that Custer engaged in sodomy with J. on June 20, 1987. The victim's mother witnessed Custer kneeling on the end of J.'s bed between J.'s legs, while J. was naked and face down on the bed with his legs spread. However, the mother did not observe an actual act of sodomy and when J. would not describe an act of sodomy, that occurred on that day or any other day, the court dismissed the case for lack of evidence. That first case was based solely upon the act of sodomy that allegedly occurred on June 20, 1987.

The second prosecution included J.'s testimony that Custer had sodomized him on several occasions over several years preceding June 20, 1987. Neither the state, the victim, nor the victim's mother made any reference to the incident on June 20, 1987 during the second trial. Accordingly, in the second prosecution, the state tried Custer for separate episodes of sodomy that were distinct from the sodomy that occurred on June 20, 1987.

Custer urges us to consider that, under Oregon law, time is not a material element of a sodomy charge, and therefore he could have been convicted at the first trial of the acts that led to his conviction at the second trial. However, the Oregon Court of Appeals rejected this suggested interpretation of Oregon law. *See Custer,* 163 Or. App. at 67–69, 986 P.2d 1203 ("Petitioner seeks ... to transmute a number of discrete acts of sodomy against the same victim ... into a single criminal episode[.]"). As "[a] state court has the last word on the interpretation of state law[,]" we are bound by the Oregon court's rejection of this argument. *Mendez v. Small,* 298 F.3d 1154, 1158 (9th Cir.2002) (citation omitted).

Custer's reliance on *Ashe v. Swenson* to support his double jeopardy argument is misplaced. In *Ashe,* the Supreme Court held that the double jeopardy clause bars the government from trying a defendant twice for perpetrating *the same crime* (robbery) against six people at the *same time,* because the actions against all of the people were part of the same criminal episode. 397 U.S. at 446–47, 90 S.Ct. 1189.

In *Ashe,* the defendant was one of several robbers of six individuals who were playing poker. At the first trial, the prosecution charged the defendant with robbing one specific participant. After the defendant was acquitted, he was subsequently charged with, tried for, and convicted of robbing a different participant. In invalidating the conviction, the United States Supreme Court emphasized that "[t]he proof of the robbery was clear, but the evidence identifying the defendant as one of the robbers was weak[.]" *Id.* at 441, 90 S.Ct. 1189. The Court determined that "after a jury determined by its verdict that petitioner was not one of the robbers, the State could [not] constitutionally hale him before a new jury to litigate that issue again." *Id.* at 446, 90 S.Ct. 1189. The Court concluded that "the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of

whether the petitioner was one of the robbers." *Id.*

The crucial difference between *Ashe* and Custer's case is that Oregon tried Custer twice for *at least two different charging acts of sodomy that Custer committed at different times* upon the same person, and thus, Custer's crimes were not part of the same criminal episode. The Oregon Court of Appeals's ruling that Custer's second prosecution was permissible was not contrary to or an unreasonable application of Federal Law. *See Mitchell v. Esparza,* 540 U.S. 12, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003) (holding that a state court need not cite that case as long as its analysis is consistent with the controlling case). The Oregon Court of Appeals's determination that Custer committed "a number of discrete acts of sodomy against the same victim," and that there was no double jeopardy bar to the second prosecution was consistent with the Supreme Court's ruling in *Ashe.*

## B. The Ineffective Assistance of Counsel Claim

█ We are barred from considering the merits of Custer's claim that his trial counsel provided ineffective assistance by failing to assert Custer's double jeopardy claim because Custer has not exhausted his state court remedies on this issue. *See Manning v. Foster,* 224 F.3d 1129, 1132 (9th Cir.2000); *see also Peterson v. Lampert,* 319 F.3d 1153, 1156 (9th Cir.2003) ("In a state like Oregon, where review in the highest court is discretionary, a prisoner must still petition the highest court for review in order to exhaust his claim properly.") (citation omitted). Custer did not exhaust his state court remedies, because Custer's Petition for Review in the Oregon Supreme Court did not reference the ineffective assistance of counsel claim at all. Moreover, Custer is now barred by Ore-

gon's statutory time constraints from presenting the ineffective assistance of counsel claim to the Oregon Supreme Court, *see* Or.Rev.Stat. § 2.520, and Custer cannot seek state postconviction relief again, *see* Or.Rev.Stat. § 138.550(3).

█ "However, a procedural default arising from the failure to exhaust may be excused if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Manning,* 224 F.3d at 1132–33 (citation and internal quotation marks omitted). "To allege cause for a procedural default, a petitioner must assert that the procedural default is due to an objective factor that is external to the petitioner and that cannot fairly be attributed to him." *Id.* at 1133 (citation and internal quotation marks omitted).

Because Custer is not claiming innocence, "we examine whether he has asserted 'cause' and 'prejudice' to excuse his procedural default." *Id.*

█ Custer argues that his default was occasioned by the failure of his post-conviction counsel to present his ineffective assistance claim before the Oregon Supreme Court. Custer acknowledges that because there is no constitutional right to appointment of counsel in such proceedings, "any ineffectiveness of [his] attorney in the post-conviction process is not considered cause for the purposes of excusing the procedural default at that stage." *Id.* (citations omitted). Nevertheless, Custer relies upon *Clemmons v. Delo,* 124 F.3d 944 (8th Cir.1997), to support his position. *Clemmons* is somewhat analogous to this case, in that post-conviction counsel in *Clemmons* refused a specific request by the petitioner to raise the claim. Petitioner then moved for leave to file a supplemental brief *pro se. Id.* at 948. Similarly,

Custer requested and received permission from the Oregon Court of Appeals to file a *pro se* brief citing to the federal Constitution for the ineffective assistance of counsel claim.

However, the pivotal difference between the two cases is that the petitioner in *Clemmons* requested leave of the Missouri Supreme Court to file his *pro se* brief. *Id.* The Eighth Circuit found that the petitioner had fairly presented his claim to that court because he "did the only thing he could do: he tried to bring the issue to the attention of the Missouri Supreme Court himself." *Id.* The holding in *Clemmons* was not based upon the *inaction* of the petitioner's lawyer, but upon the *action* of the petitioner. In fact, the court recognized the "unique circumstances" of *Clemmons.* *Id.* In this case, Custer did take personal action to bring the ineffective assistance of counsel claim to the attention of the Oregon Court of Appeals by requesting permission to file a *pro se* brief. However, he did not take similar action with regard to the Oregon Supreme Court, the court in which the issue must be raised to be preserved. *See Peterson,* 319 F.3d at 1156. Accordingly, Custer cannot show cause for his procedural default, and we cannot consider the merits of Custer's claim of ineffective assistance. *See Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir. 1998).

## IV. CONCLUSION

The Oregon Court of Appeals's decision upholding Custer's conviction was not contrary to or an unreasonable application of controlling Supreme Court authority. Custer's ineffective assistance of counsel claim is procedurally barred. Accordingly, the judgment of the district court is

**AFFIRMED.**

FERGUSON, Circuit Judge, dissenting in part:

Three years after a trial at which the State of Oregon was unable to produce sufficient evidence for a conviction of sodomy of his stepson on or about June 20, 1987, Jimmie Lee Custer was tried a second time and convicted of sodomy of his stepson on or between November 1, 1986, and June 19, 1987. Because "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding," *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), I dissent from Part III(A) of the majority opinion.

The Fifth Amendment provides that no one shall be "subject for the same offense to be twice put in jeopardy of life or limb." For Custer to prevail on his Double Jeopardy claim, he must demonstrate that, under clearly established federal law, he was subject to jeopardy for the same offense at both his first and second trials. He has made such a showing under the original common law test, which remains part of federal law established by the Supreme Court.

In a concurrence to *Ashe v. Swenson,* 397 U.S. 436, 450–51, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), Justice Brennan stated that the precise meaning of "same offense" in the Double Jeopardy context had not been determined at the time the Bill of Rights was framed. The first common law definition of the term was not presented until 1796, when *King v. Vandercomb & Abbott,* 2 Leach 708 (Crown 1796), was decided. *Ashe,* 397 U.S. at 451, 90 S.Ct. 1189. *Vandercomb* held "that unless the first indictment were such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment

can be no bar to the second."[1] 2 Leach at 720. To state the matter affirmatively, if a defendant might have been convicted by proof of the facts set forth in the second case, then an acquittal of the first case bars the second one.

To show a Double Jeopardy violation under the common law test, Custer must demonstrate that he could have been convicted under the first indictment by proof of the facts alleged in the second indictment. Custer's second indictment alleged that Custer "on or between November 1, 1986, and June 19, 1987, in Marion County, Oregon, did unlawfully, feloniously and knowingly engage in deviate sexual intercourse with ... a child under the age of sixteen years." Consequently, to meet the common law test, Custer must demonstrate that, had the prosecution been able to prove that "deviate sexual intercourse" with his stepson occurred "on or between November 1, 1986, and June 19, 1987," in his first trial, he could have been convicted under the first indictment, which alleged that such conduct took place "on or about June 20, 1987."

Under Oregon law, Custer could have been convicted at his first trial by proof of the facts alleged in the second indictment. Time is not a material element of the crime of sodomy. *State v. Howard,* 214 Or. 611, 331 P.2d 1116, 1118 (1958). "If the date of a crime is not a material element of the offense, variance between the date alleged and the date proven is not a fatal flaw, unless the date proven is outside the statute of limitations, or the defendant is prejudiced by the variance." *State v. Baldeagle,* 154 Or.App. 234, 961 P.2d 264, 267 (1998) (holding that a trial court did not err in instructing the jury that it could find the defendant guilty of sexual abuse between April 1, 1994, and May 31, 1995,

where the indictment alleged that the abuse occurred between January 1, 1995, and March 31, 1995). *Baldeagle* was an application of *State v. Long,* 320 Or. 361, 885 P.2d 696 (1994), in which the indictment had alleged that the defendant had committed sodomy "between June 1, 1982 and April 30, 1983"; at trial, the state presented evidence that the sodomy had occurred on April 22, 1984. In upholding that conviction, the Court relied on its holding in *Howard,* 331 P.2d at 1118–19 (upholding a conviction after the state elected at trial to prove that the defendant had committed sodomy on August 1, 1957, despite an indictment charging that the sodomy had occurred on September 27, 1957).

Here, the variance in dates is small (one day after the final date of abuse alleged in the second indictment) and there is no finding that the dates of either indictment were outside the relevant statute of limitations.

The record is clear from the prosecutor's opening statement at the first trial that the State planned to put on evidence of prior episodes of the defendant's sexual abuse of his stepson and had such evidence. The prosecutor told the jury in his opening statement that the victim "heard his stepfather coming into the room, and *you will hear from the evidence* this was not the first time he had heard his stepfather coming, and he had some anticipation of what was happening" (emphasis added). Moreover, although the prosecutor said that the victim's mother would testify as to her observations regarding one specific instance of sodomy, he told the jury that they would "hear [the victim] testify about what happened *in his life*" (emphasis added). It is clear that at the first trial the

---

**1.** Justice Brennan termed this the "same evidence" test (*Ashe,* 397 U.S. at 451, 90 S.Ct. 1189); however, I will refer to it as the common law test.

prosecutor could have proved the events contained in the second indictment and certainly planned to do so.

The majority holds that Custer was not in jeopardy at his first trial for the charges alleged in the second indictment, and states that this issue was already decided as a matter of Oregon law in *Custer v. Baldwin,* 163 Or.App. 60, 986 P.2d 1203 (1999) (evaluating whether Custer's second trial violated his former jeopardy rights under the Oregon Constitution). However, that opinion held that, under the "unitary transaction test" described in *State v. Lyons,* 161 Or.App. 355, 985 P.2d 204 (1999), Custer's acts of sodomy were not all part of the "same criminal episode" and consequently did not need to be prosecuted together under Oregon former jeopardy law. *Custer,* 986 P.2d at 1207–08. It did not address the question of whether the facts alleged in the second indictment, had they been proved in the first trial, could have resulted in a conviction at that trial. This is the question posed by the common law test, and current Oregon law answers it in the affirmative.

Given that Custer's second trial is a double jeopardy violation under the common law test, the question on habeas review is whether the common law test is part of clearly established federal law. A review of the relevant Supreme Court cases states that it is.

In his *Ashe* concurrence, Justice Brennan stated that the test described in *Vandercomb* in 1796 "was soon followed by a majority of American jurisdictions." 397 U.S. at 451, 90 S.Ct. 1189. One of those jurisdictions was Massachusetts, which adopted the common law test in *Morey v. Com.,* 108 Mass. 433, 434 (1871): "A con-

viction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other."[2]

In *Ex parte Nielsen,* 131 U.S. 176, 189–90, 9 S.Ct. 672, 33 L.Ed. 118 (1889), the Supreme Court said, "in order that an acquittal may be a bar to a subsequent indictment for [a] lesser crime, it would seem to be essential that a conviction of such crime might have been had under the indictment for the greater. If a conviction might have been had, and was not, there was an implied acquittal." The Court distinguished *Morey* on its facts, but said that "[t]he conclusion we have reached is in accord with a proposition laid down by the Supreme Judicial Court of Massachusetts in the case of *Morey v. Commonwealth.*" *Nielsen,* 131 U.S. at 187, 9 S.Ct. 672.

In both *Carter v. McClaughry,* 183 U.S. 365, 395, 22 S.Ct. 181, 46 L.Ed. 236 (1902), and *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 (1911), the Supreme Court cited *Morey's* language directly: "A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other." Noting that *Carter* had cited *Morey* "with approval," the *Gavieres* Court applied the common law test and found "that evidence sufficient for conviction under the first charge would not have convicted under the second indictment ... Consequently a conviction of one would not bar a prosecution for the other." 220 U.S. at 343–44, 31 S.Ct. 421. Four years later,

---

**2.** In so holding, *Morey* relied on *Com. v. Roby,* 29 Mass. 496, 504 (1832), which cited *Vandercomb* as the origin of the rule "that unless the first indictment were such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second."

in *Ebeling v. Morgan*, 237 U.S. 625, 630–31, 35 S.Ct. 710, 59 L.Ed. 1151 (1915), the Court said that, as in *Gavieres*, the Court would apply the common law test stated in *Morey* to the case before it.

The common law test has historically been part of federal law as interpreted by the U.S. Supreme Court, and nothing in recent Supreme Court discussions of the common law test suggests that the vitality of the test has been undermined. In *Ashe*, two justices writing separately specifically addressed the question of the common law test, and both began from the premise that the *Ashe* ruling was an expansion of the common law test.[3] Moreover, one of the most recent Double Jeopardy cases, *United States v. Dixon*, 509 U.S. 688, 710, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), justified its holding in part by noting that the ruling was consistent with the holding in *Vandercomb* that "these two offenses are so distinct in their nature, that evidence of one of them will not support an indictment for the other" (quoting *Vandercomb*, 2 Leach at 717).[4]

The common law test has been established as federal law by the Supreme

Court. Application of this test to the case before us shows that Custer's second trial violated his Fifth Amendment Double Jeopardy rights. The conclusion of the majority that no Double Jeopardy violation occurred was contrary to this federal law.

This case tests the strength of our Constitution. Every emotion that we have demands that the defendant be punished. But we cannot base constitutional rights and duties on an emotional foundation. The decision of the District Court to deny Custer's habeas petition should be reversed. I therefore respectfully dissent from Part III(A) of the majority opinion.

---

**3.** The dispute between the justices was over whether the expansion was merited. Chief Justice Burger's dissent said that the Court had already expanded the Double Jeopardy Clause into the test "first enunciated in The King v. Vandercomb," and that the majority had needed "to reach out far beyond the accepted offense-defining rule to reach its decision in this case." *Ashe*, 397 U.S. at 463 & n. 1, 464, 90 S.Ct. 1189. Justice Brennan's concurrence made the case for expanding the common law test, which in his view permitted a number of problematic prosecutions. *Id.* at 451–52, 90 S.Ct. 1189. (Despite this recognition of the common law test's limitations, Justice Brennan continued to believe that it held remaining currency: in *Ciuzio v. United States*, 416 U.S. 995, 999, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1974), he dissented from a denial of a petition for writ of certiorari on the basis that, under the common law test as formulated in *Morey*, there was a clear ques-

tion as to "whether the evidence required to support a conviction upon one of the charges would have been sufficient to warrant conviction upon the other.")

**4.** *Dixon* overruled *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady* had rejected a "same evidence" test, explaining in a footnote that "[a] true 'same evidence' test or 'actual evidence' test would prevent the government from introducing in a subsequent prosecution any evidence that was introduced in a preceding prosecution. It is in this sense that we discuss, and do not adopt, a 'same evidence' or 'actual evidence' test." *Id.* at 521 n. 12, 110 S.Ct. 2084. Although Justice Brennan and Chief Justice Burger had referred to the common law test as a "same evidence" test, the overruled *Grady* opinion had rejected a different (and far broader) rule.