**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LUIS MARIANO MARTINEZ,
          *Petitioner-Appellant,*

          v.

DORA SCHRIRO, Director of the
Arizona Department of
Corrections,

          *Respondent-Appellee.*

No. 09-15170

D.C. No.
2:08-cv-00785-JAT

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
January 11, 2010—San Francisco, California

Filed September 27, 2010

Before: J. Clifford Wallace, Procter Hug, Jr. and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Wallace

16487

## COUNSEL

Robert Bartels, Esq., Tempe, Arizona, for petitioner-appellant Luis Mariano Martinez.

John P. Todd, Esq., Deputy State Attorney General, Phoenix, Arizona, for respondents-appellees Dora Schriro, et al.

## OPINION

WALLACE, Senior Circuit Judge:

Martinez, a prisoner in the custody of the Arizona Department of Corrections, petitioned for a writ of habeas corpus. Martinez alleges that he received ineffective assistance of counsel at trial, but that his state-appointed appellate counsel failed to raise this claim in the first state post-conviction relief proceeding brought on his behalf. Martinez asserts a federal constitutional right to the effective assistance of counsel in connection with his state proceeding. He contends that the right of an indigent defendant to the assistance of appellate counsel is fundamentally a right to counsel in connection with the presentation of a claim of error at the first tier of review. Collateral review presented the first opportunity, under Arizona law, at which Martinez could assert an ineffective-assistance-of-trial-counsel claim. Martinez therefore reasons that he has a right to the effective assistance of counsel in the first post-conviction relief proceeding in which he could present a claim of ineffective assistance by his trial counsel.

The district court had jurisdiction over Martinez' habeas petition pursuant to 28 U.S.C. §§ 2241(a) and 2254(a). The district court denied the petition on the basis that it was procedurally defaulted. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). We affirm.

## I.

Martinez is serving two consecutive terms of 35 years to life, following his conviction for two counts of sexual conduct with a person under the age of fifteen. With the assistance of state-appointed counsel, Martinez pursued a direct appeal of his conviction. The Arizona Court of Appeals affirmed Martinez' conviction, and the Arizona Supreme Court denied review. On direct appeal, Martinez raised issues that are not pertinent to our review of his federal habeas petition.

In May 2002, during the pendency of his direct appeal, Martinez' state-appointed appellate counsel initiated an Arizona post-conviction relief proceeding on his behalf, pursuant to Arizona Rule of Criminal Procedure 32.4.a, pursuant to which a convicted defendant commences collateral review by filing a "Notice of Post-Conviction Relief." The defendant's claims are to be stated in a subsequent "petition." *See* Ariz. R. Crim. Pro. 32.4.c(2), 32.5; Ariz. R. Crim. Pro. Form 24(b). Martinez asserts that his counsel filed the Notice of Post-Conviction Relief, thereby initiating Rule 32 post-conviction relief proceedings, without prior notice to him and without his authorization.

Martinez' counsel thereafter filed a statement in the Rule 32 action asserting that she had "reviewed the transcripts and trial file and [could] find no colorable claims pursuant to Rule 32." *Cf. State v. Smith*, 910 P.2d 1, 4 (Ariz. 1996) (explaining that if "after conscientiously searching the record for error, appointed counsel in a [post-conviction relief] proceeding finds no tenable issue and cannot proceed, the defendant is entitled to file a pro per PCR," and counsel must so notify the court and the client). In this same statement, counsel requested that the court grant Martinez 45 days in which to file a pro se petition in support of post-conviction relief. Martinez alleges that his counsel filed this statement without prior notice to him and without his consent. He alleges that his counsel also failed to advise him that he needed to file a pro se petition. Martinez alleges that he did not file a petition because his counsel "failed effectively to inform Petitioner that he needed to file his own petition." On April 28, 2003, after time had expired for Martinez to file a petition, the trial court dismissed the Rule 32 action for post-conviction relief.

On October 18, 2004, represented by new counsel, Martinez filed a second "Notice of Post-Conviction Relief" in Arizona Superior Court. Martinez filed a timely supporting petition on February 7, 2005. This petition alleged that Martinez' trial counsel was ineffective in several respects, amount-

ing to ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment constitutional rights.

The Arizona Superior Court dismissed Martinez' second action for post-conviction relief as "precluded" under Arizona Rule of Criminal Procedure 32.2.a and also as without merit. Arizona Rule of Criminal Procedure 32.2.a(3) precludes a defendant from receiving relief based upon any ground that, *inter alia*, "has been waived at trial, on appeal, or in any previous collateral proceeding." In effect, the Arizona Superior Court deemed Martinez' claims to be procedurally defaulted because he had failed to raise them in his first Rule 32 action for post-conviction relief. Martinez sought review in the Arizona Court of Appeals. That court granted review, but denied relief to Martinez on the basis that his claims were precluded. Martinez sought further review by the Arizona Supreme Court, which denied review without opinion.

Having exhausted the avenues of relief available in state court, Martinez turned to the federal court. On April 24, 2008, he filed the present action, petitioning for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241(a) and 2254(a). Martinez' federal petition again asserted an ineffective-assistance-of-trial-counsel claim. The district court denied Martinez' petition as procedurally defaulted. The district court issued a certificate of appealability, however, with respect to two related issues: "1) whether Arizona's procedural bar, as applied to this case, is an adequate and independent state law ground for denying relief; [and] 2) whether Petitioner has shown cause to excuse his procedural default."

## II.

Martinez' habeas petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). When reviewing a petition for a writ of habeas corpus, federal courts "will not review a question of federal law decided by a state court if the decision of that

court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Thomas v. Goldsmith*, 979 F.2d 746, 749 (9th Cir. 1992). This rule applies to both substantive and procedural state law grounds. *Coleman*, 501 U.S. at 729. The state law ground at issue in this case is procedural.

In order to bar federal review, the state procedural rule "must have been firmly established and regularly followed" at the time of the purported procedural default. *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997), *quoting Ford v. Georgia*, 498 U.S. 411, 424 (1991) (internal quotation marks and citation omitted); *see also Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994) (state procedural bar "must be clear, consistently applied, and well-established at the time of the petitioner's purported default"). A state procedural rule may be "inadequate" to preclude federal review, however, if it frustrates the exercise of a federal right. *See Hoffman v. Arave*, 236 F.3d 523, 531 (9th Cir.), *cert. denied*, 534 U.S. 944 (2001).

Where a habeas petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," the federal courts may not review the petition, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To establish cause for a procedural default, a petitioner must show that the default was due to an "objective factor" that was "external" to him and could not "fairly be attributed to him." *Id.* at 753; *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) (petitioner must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule").

We review the district court's denial of Martinez' petition for writ of habeas corpus de novo. *Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004).

**III.**

The Arizona Court of Appeals concluded that Martinez' ineffective-assistance-of-trial-counsel claim was procedurally defaulted by application of Arizona Rule of Criminal Procedure 32.2, which provides that a

> defendant shall be precluded from relief under this rule based upon any ground:
>
> > (1) Raiseable on direct appeal under Rule 31 or on post-trial motion under Rule 24; (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding; (3) That has been waived at trial, on appeal, or in any previous collateral proceeding.

Ariz. R. Crim. Pro. 32.2. The district court concluded that this state procedural rule was an "adequate and independent" basis to bar federal habeas corpus review, and that there was not cause and prejudice to excuse the default.

Martinez argues that the state procedural rule is not "adequate and independent" to bar federal review because it would frustrate the exercise of his federal constitutional right to the effective assistance of counsel. He alleges that the performance of his appellate counsel was constitutionally ineffective in connection with his first Rule 32 action. He contends that the Arizona Court of Appeals ignored the inadequacy of his appellate counsel, and that application of Arizona Rule of Criminal Procedure 32.2.a frustrated his federal constitutional right to the effective assistance of counsel.

Martinez' allegation of ineffective assistance of appellate counsel is central to this appeal. This allegation underpins Martinez' arguments as to both procedural default and "cause and prejudice." The ineffectiveness of appellate counsel, however, is a relevant and cognizable consideration in this appeal only if Martinez possessed a federal constitutional right to the assistance of counsel in the relevant proceeding for collateral review.

## A.

The Supreme Court has never recognized a federal constitutional right to the assistance of counsel in collateral review proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions"), *citing Johnson v. Avery*, 393 U.S. 483, 488 (1969); *see also Coleman*, 501 U.S. at 755; *Murray v. Giarratano*, 492 U.S. 1, 7-8 (1989). In several cases, we have concluded that there is no federal constitutional right to counsel in collateral proceedings, even where those post-conviction proceedings constitute the first opportunity for a criminal defendant to present an ineffective assistance of counsel claim. *See Ellis v. Armenakis*, 222 F.3d 627, 633 (9th Cir. 2000) (holding there is "no constitutional right to counsel during state habeas proceedings even if that was the first forum in which a defendant could challenge the constitutional competence of counsel"); *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir.), *cert. denied*, 516 U.S. 1143 (1996); *Jeffers v. Lewis*, 68 F.3d 299, 300 (9th Cir.) (en banc), *cert. denied*, 515 U.S. 1187 (1995); *Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993).

In this case, nevertheless, Martinez asserts that he is entitled to the effective assistance of counsel in connection with his first state petition for post-conviction relief. He asserts that a right to the assistance of counsel attaches to the presentation of a claim of error at the first tier of review, relying upon *Hal-*

*bert v. Michigan*, 545 U.S. 605 (2005) and *Douglas v. California*, 372 U.S. 353 (1963). Martinez recognizes the general rule that "there is no right to counsel in state collateral proceedings," see *Coleman*, 501 U.S. at 755, but asserts that there might be an exception where "state collateral review is the first place a prisoner can present a challenge to his conviction." 501 U.S. at 755.

We begin by reviewing the cases that frame our decision. On the one hand, the Court's decisions in *Halbert* and *Douglas* recognized a federal constitutional right to counsel in connection with a criminal defendant's direct appeal from his conviction (or the equivalent of direct appeal). On the other hand, in *Ross v. Moffitt*, the Court declined to recognize a right to counsel in connection with a criminal defendant's pursuit of second-tier review. 417 U.S. 600 (1974).

### 1.

**[1]** In *Douglas*, the Court recognized the right of an indigent criminal defendant to the assistance of counsel in his first appeal as of right in state court. 372 U.S. at 355-56; *see also Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The petitioners in *Douglas* were two indigent defendants who had been jointly tried and convicted in California. 372 U.S. at 353-54. They requested, but were denied, the assistance of counsel on appeal. *Id.* at 354. Under a California procedural rule, the state intermediate appellate courts, upon receiving a indigent's request for counsel, would make an independent investigation of the record and determine if the appointment of counsel would benefit the defendant or the courts. *Id.* at 354-55. Under California's system, in the Court's estimation, the type of appeal available to a criminal defendant hinged upon whether or not he could afford counsel. If he could not, his case was subjected to ex parte review on the merits without benefit of any argument by counsel. *Id.* at 355-56. The appellate court would "prejudge the merits before it can even determine whether counsel should be provided." *Id.* at 356. By

contrast, a criminal defendant who could afford counsel was "not faced with the preliminary 'ex parte examination of the record,' but had their arguments presented to the court in fully briefed form." *Ross*, 417 U.S. at 608, *citing Douglas*, 372 U.S. at 356.

**[2]** *Douglas* concluded that this was not a fair procedure: "When an indigent is forced to run this gantlet [sic] of a preliminary showing of merit, the right to appeal does not comport with fair procedure." 372 U.S. at 357. In addition, the Court determined that equal protection was being denied to the poor: "where the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, . . . an unconstitutional line has been drawn between rich and poor." *Id*. *Douglas* dealt only with a defendant's first state appeal as a matter of right and did not concern the appointment of counsel "for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court." *Id*. at 356. In later cases, the Court returned to consider these unanswered questions.

In *Ross*, the Court declined to extend the right to counsel beyond a defendant's first appeal from his criminal conviction. 417 U.S. at 618. In that case, the petitioners sought the appointment of counsel for a second-tier discretionary appeal to a state Supreme Court (there, North Carolina) and for certiorari review to the Supreme Court. *Id*. at 604. The Court held that counsel need not be appointed for indigent defendants pursuing discretionary appeals where those defendants had been provided with appointed counsel in their first appeal.

In *Ross*, the Court recognized that *Douglas* appeared to invoke both the fundamental fairness requirement of the Due Process Clause and the Fourteenth Amendment's equal protection guarantee. But *Ross* did not put much stock in the due process rationale, observing that "there are significant differ-

ences between the trial and appellate stages of a criminal proceeding." *Id.* at 610. The purpose of trial "is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt," while in the appellate process, a defendant seeks "not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilty made by a judge or a jury below." *Id.* This difference is significant because, while a state may not dispense with the trial stage without a defendant's consent, the state "need not provide any appeal at all." *Id.* at 611. Because of these differences, the Court reasoned, the question at issue was more "profitably considered under an equal protection analysis." *Id.*

Turning to the equal protection issue, the Court determined that unfairness would result only "if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty." *Id.* The Fourteenth Amendment "does not require absolute equality or precisely equal advantages." *Id.* at 612, *citing San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 24 (1973). The state has no duty to duplicate "the legal arsenal that may be privately retained by a criminal defendant . . . but only to assure [that an] indigent defendant [had] an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Id.* at 616. The Court concluded that an indigent defendant was not denied "meaningful" access to the state Supreme Court simply because the state did not appoint counsel to assist him in seeking discretionary review. *Id.* at 615. At the stage of a second-tier appeal, the criminal defendant would have already received the assistance of counsel in connection with his first appeal. *Id.* at 615, 616-17. Counsel's work, supplemented by a defendant's pro se submissions, would provide the state Supreme Court "with an adequate basis for its decision to grant or deny review." *Id.* An indigent was thus less handicapped by the denial of counsel for a discretionary appeal than by the denial of counsel for an initial appeal as of right, as considered in *Douglas. Ross*, 417 U.S. at 616.

**[3]** This conclusion was reinforced by looking to the role of the North Carolina Supreme Court and the United States Supreme Court. *Id.* at 615. The North Carolina Supreme Court did not sit to correct the adjudication of guilt in individual cases, but rather reviewed cases where "the subject matter of the appeal [had] significant public interest, . . . the cause involves legal principles of major significance . . . , or . . . the decision below [was] in probable conflict" with another decision of the court. *Id.* (internal citations and quotation marks omitted). Likewise, review by the United States Supreme Court "is discretionary and depends on numerous factors other than the perceived correctness of the judgment [the Court] is asked to review." *Id.* at 616-17. In sum, the Court concluded that the Constitution did not require the appointment of counsel to an indigent defendant seeking second-tier review or other discretionary review. The Court stressed that the right to the assistance of counsel on appeal extended only to a first appeal.

## 2.

In *Halbert*, the Court evaluated the right to counsel in the context of a Michigan law providing that criminal defendants, if convicted by plea, could obtain review of their convictions only by discretionary appeal. 545 U.S. at 609. The Michigan law at issue provided that "an appeal by an accused who pleads guilty or nolo contendere shall be by the leave of the court." *Id.*, *citing* Mich. Const., art. 1 § 20. Pursuant to this law, "several Michigan state judges began to deny appointed appellate counsel to indigents convicted by plea." *Id.* (internal quotation marks and citation omitted). Halbert was indigent and had been convicted of second-degree criminal sexual conduct pursuant to his plea of nolo contendere. *Id.* at 609, 614. He requested the appointment of counsel to apply for leave to appeal his conviction. *Id.* at 609. The state trial court and intermediate appellate court denied Halbert's request; the Michigan Supreme Court denied review. *Id.*

**[4]** Halbert's appeal was framed by *Douglas* and *Ross*, and *Halbert* characterized the issue before it as "essentially one of classification: With which of those decisions should the instant case be aligned?" *Halbert*, 545 U.S. at 616. The Court determined that the case was governed by *Douglas*, highlighting two reasons for its conclusion. *Id.* at 616-17. First, in deciding whether to grant leave to appeal, the Michigan Court of Appeals looked to the merits of the claim as set forth in an application for leave to appeal. *Id.* at 617. Thus, like the petitioners in *Douglas*, Halbert's appeal was subject to ex parte review without benefit of counsel's argument, and, although the appeal was "discretionary," the Michigan Court of Appeals sat in an "error-correction instance," and not as the Michigan Supreme Court. *Id.* at 617-620. Second, the Court explained that "indigent defendants pursuing first-tier review in the Court of Appeals are generally ill equipped to represent themselves," and without the assistance of counsel in preparing an application for leave to appeal, an indigent defendant would be "disarmed in [his] endeavor to gain first-tier review." *Id.* at 617-18. Because a plea-convicted defendant was only afforded the opportunity for review by discretionary appeal, that discretionary appeal was the first, and likely the only, direct review the defendant's conviction and sentence would receive. *Id.* at 619. The Court concluded that review of an application for leave to appeal therefore "rank[ed] as a first-tier appellate proceeding requiring the appointment of counsel under *Douglas*." *Id.* at 609. Thus, under the Michigan system, Halbert was entitled to the assistance of counsel in pursing the first discretionary appeal from his conviction.

**[5]** In the case before us, Martinez asserts a right to counsel in collateral review insofar as that is the first opportunity to obtain review of his ineffective-assistance-of-trial-counsel claim. Under Arizona law, collateral review proceedings are the first point at which an ineffective assistance of counsel claim may be presented for review. *State v. Spreitz*, 39 P.3d 525, 527 (Ariz. 2002); *cf. Lambright v. Stewart*, 241 F.3d 1201, 1203-04 (9th Cir. 2001), *cert. denied*, 534 U.S. 1118

(2002). Therefore, Martinez' initial Rule 32 action was the first opportunity for him to obtain review of the effectiveness of his trial counsel. Martinez argues that his claim is thus comparable to that considered in *Halbert* and *Douglas*. He makes three primary arguments: (1) collateral review presented "the first point ('tier') at which state law permitted [him] to raise any ineffective-assistance-of-trial-counsel claim," (2) Arizona courts would review his ineffective-assistance-of-trial-counsel claim asserted in the first post-conviction relief proceeding on the merits, and (3) defendants are "ill equipped to represent themselves in pursuing first-tier review of such claims."

## B.

**[6]** We conclude that there is no federal constitutional right to the assistance of counsel in connection with state collateral relief proceedings, even where those proceedings constitute the first tier of review for an ineffective assistance of counsel claim.

**[7]** In this case, Martinez seeks to extend his right to counsel to collateral proceedings. But the Court has never recognized a right to counsel in collateral review. Moreover, the Court has never extended the right to counsel beyond a defendant's first appeal. Beginning with *Douglas*, the Court recognized that an indigent criminal defendant has the right to the assistance of appointed counsel only "with the first appeal, granted as a matter of right . . . from a criminal conviction." 372 U.S. at 356. The Court has repeatedly declined to extend the right to counsel beyond a criminal defendant's first appeal of his conviction. In *Ross*, the Court refused to extend a right to counsel to second-tier or certiorari review. 417 U.S. at 615-17. And in *Finley*, the Court declined to recognize a constitutional right to counsel in collateral proceedings, observing that "[o]ur cases establish that the right to appointed counsel extends to the first appeal of right, and no further." 481 U.S. at 555.

A general right to counsel on collateral review cannot be extrapolated from Halbert and *Douglas*. The more difficult question, however, is whether collateral review might constitute the "first tier" of review for a petitioner's ineffective-assistance-of-trial-counsel claim, and thus be sufficient to give rise to a right to counsel. That is, if collateral review entails a determination on the merits of an ineffective assistance of counsel claim, can collateral review represent the first opportunity for a criminal defendant to obtain review of his conviction, such that Martinez is similarly situated to a defendant pursuing his first appeal as of right? We now turn to this important question.

## 1.

*Halbert* recognized a right to counsel in certain "discretionary" proceedings. The appellate procedure at issue there was effectively the only means of direct review available to the petitioner. Without the aid of counsel in that discretionary appeal, a plea-convicted defendant would be frustrated in attempting to obtain direct review of his conviction. The appeal procedure at issue in *Halbert* was "discretionary," but was nevertheless equivalent to direct review. *Ross*, although it pertained to "discretionary" appeal procedures, was not analogous.

**[8]** This case is more like *Ross* than *Halbert*. In *Ross*, the petitioner had already received direct review of his convictions, and had already received the assistance of counsel in connection with that first appeal. Likewise, here, Martinez has already received direct review of his conviction and received the assistance of counsel in connection with that appeal. In *Halbert*, by contrast, the petitioner sought the functional equivalent of direct review, the first appeal of his conviction. Even if collateral review presents the first tier of review for Martinez' ineffective assistance of counsel claim, we conclude that Martinez' action is not analogous to a direct appeal — or the *first* opportunity for him to obtain review of his con-

viction — so as to entitle him to effective counsel. We therefore conclude that Martinez' case is not governed by *Douglas* and *Halbert*.

**2.**

Martinez asserts that a pro se defendant is "ill equipped" to represent himself in collateral proceedings. But this general assertion does not sway us. Indeed, the assistance of counsel would aid any indigent defendant in pursuing review of his conviction, whether by first-tier or second-tier appeal, or by collateral review. *Ross*, 417 U.S. at 616. Of relevance here, Martinez faces a lesser handicap in pursuing collateral review than a defendant pursuing a first appeal, as in *Douglas* and *Halbert*. Martinez has already received the assistance of appellate counsel in a prior proceeding, like the petitioner in *Ross*.

In *Ross* and *Halbert*, the Court observed that a defendant's handicap on second-tier appeal is far less than the relative handicap borne by the indigent defendant denied counsel in his first appeal as of right. *Ross*, 417 U.S. at 616; *Halbert*, 545 U.S. at 619. A defendant seeking second-tier review will have received the assistance of counsel in connection with direct review, and would have "at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case." *Ross*, 417 U.S. at 615.

**[9]** *Ross*'s and *Halbert*'s analyses of second-tier review applies to the context of collateral review presented in this case. Collateral review is more like a second-tier appeal than a first-tier appeal as of right. Collateral review and direct review are not on equal footing where, as here, a defendant has already benefitted from the assistance of counsel in a direct appeal. In collateral review proceedings, Martinez does not face the same burden and disadvantages as a defendant

pursuing direct review without the assistance of counsel. Even though collateral proceedings might provide the first tier of review for a particular claim, Martinez has already benefitted from the assistance of counsel in his first appeal.

**3.**

**[10]** Martinez asserts that collateral review of his ineffective assistance of counsel claim involves a determination on the merits. But this case does not involve a determination on the merits in the same way as *Halbert* and *Douglas*. In *Douglas,* the state intermediate appellate court reviewed the merits of a case in deciding whether to appoint counsel for direct review. The merit of petitioners' cases was reviewed ex parte and without benefit of briefing and argument from counsel. In *Halbert*, the state's intermediate appellate court likewise performed a gatekeeping function by reviewing applications for leave to pursue discretionary appeal independently, looking to the merits of a case as presented in the application. In such situations, without the assistance of counsel, most indigent defendants would be thwarted in their attempts to obtain review of their convictions. In the case before us, however, there is no impediment to the first tier of appeal; that has already been provided to Martinez. The court performs no gatekeeping function that would bar Martinez from presenting his ineffective assistance of counsel claim (for example, an ex parte review of the merits).

**[11]** Looking to a related point, as set forth above, *Ross* explained that first- and second-tier appeals generally serve different purposes. In a direct criminal appeal, a court sits to correct erroneous adjudication of guilt in an individual case. By contrast, discretionary appeal to a state Supreme Court or to the United States Supreme Court is not intended to correct error in individual cases, but rather to address questions of public importance, critical issues of law, conflicts in the decisions of relevant courts, and so forth. Likewise, collateral review also does not provide a function analogous to direct

review. In *Finley*, the Court explained that a defendant could have no right to counsel in a collateral attack upon his conviction, as he had no right to counsel in discretionary second-tier review pursuant to *Ross*. *Finley*, 481 U.S. at 555. The Court reasoned: "[p]ostconviction relief is even further removed from the criminal trial process than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature." *Id*. at 556-57. In collateral review, the courts do not perform an error correction function analogous to an appellate court hearing a criminal defendant's direct appeal as of right from his conviction.

**4.**

**[12]** Our conclusion is confirmed by returning to the *Douglas* decision. *Douglas* established the principles on which a right to appellate counsel could be recognized. *Douglas* stated both a due process rationale and an equal protection rationale. Neither supports Martinez' claim.

**[13]** The due process rationale does not fit here. In *Ross*, the Court explained that the function of trial and appeal are vastly different. As we have already set forth, *Ross* explained that trial serves to convert an accused person to the status of convicted, and may not be eliminated without a defendant's consent. A state, however, has no duty to provide for the appeal of a criminal conviction, and a state similarly has no duty to provide for collateral review. *Finley*, 481 U.S. at 557.

**[14]** The equal protection rationale is also inapplicable in this case. Equal protection requires that the state appellate system be "free of unreasoned distinctions, . . . and that indigents have an adequate opportunity to present their claims fairly within the adversary system," but the equal protection guarantee does not require the elimination of economic disparities. *Ross*, 417 U.S. at 612. Instead, "[a]bsolute equality is not required; lines can be and are drawn and we often sustain them." *Id*. at 608 (internal quotation marks omitted), *cit-*

*ing Douglas*, 372 U.S. at 356-57; *see also id*. at 612 ("Fourteenth Amendment does not require absolute equality or precise legal advantages" and it does not require the state to "equalize economic conditions") (internal quotation marks and citations omitted). Martinez advances no argument grounded in the rationale of equal protection, and we discern no equal protection concern in this case.

**[15]** In sum, the Court has repeatedly held that there is no right to counsel in collateral proceedings. The Court has never held that a right to counsel necessarily adheres at every "first tier" of review. Martinez' position rests on a shaky legal argument that we should recognize an exception to the general rule that there is no right to counsel in collateral review. But this exception would swallow the general rule, *see Bonin v. Calderon*, 77 F.3d at 1160, and we will not adopt it.

## C.

**[16]** We do not review the merits of a habeas petition where the state court decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. A state procedural rule is not adequate to bar federal review if that "state procedural rule frustrates the exercise of a federal right." *Hoffman*, 236 F.3d at 531. Martinez argues that Arizona Rule of Criminal Procedure 32.2 is not an adequate basis on which to deny federal review, because application of that procedural rule would frustrate the protection of his federal rights. Martinez' argument that Arizona Rule of Criminal Procedure 32.2 is inadequate to bar federal review is dependent upon his position that he has a federal constitutional right to counsel in collateral proceedings.

**[17]** In this case, Arizona Rule of Criminal Procedure 32.2 is an adequate and independent basis to support the state court judgment. We have held that there is no right to the assistance of counsel in collateral review proceedings, even where those

proceedings constitute a first tier of review under the facts of this case. Martinez' contention that Arizona Rule of Criminal Procedure 32.2 is inadequate to bar federal habeas review therefore fails. Review of Martinez' habeas petition by the federal courts will be procedurally barred unless he can show cause and prejudice to excuse his default. We now turn to that issue.

## IV.

Where a habeas petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," the federal courts may not review the petition "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Martinez asserts that there may be cause and prejudice to excuse any procedural default "if Petitioner could show that first post-conviction counsel was unconstitutionally ineffective."

[18] We have already concluded that there is no right to the assistance of post-conviction counsel in connection with a state petition for post-conviction relief, such as Martinez asserts in this case. Without a right to the appointment of counsel, there can be no right to the effective assistance of counsel. *Id.* at 752 ("a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings"); *see also Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) (where there is no constitutional right to counsel there can be no deprivation of effective assistance). Ineffective assistance of post-conviction counsel cannot provide cause to excuse procedural default. *Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000); *Custer v. Hill*, 378 F.3d 968, 974 (9th Cir. 2004) ("Any ineffectiveness of [his] attorney in the post-conviction process is not considered cause for the purposes of

excusing the procedural default" (internal quotation marks omitted)). Martinez' claims are procedurally barred.

**AFFIRMED.**