Argued May 19, affirmed May 28, petition for rehearing denied June 29, petition for review denied September 21, 1971

STATE OF OREGON, *Respondent, v.*
R. L. ANDERSON, also known as
ROSCOE L. ANDERSON (C-55496), *Appellant.*

485 P2d 446

*Douglas C. Morris*, Portland, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before FOLEY, Presiding Judge, and FORT and HOWELL, Judges.

PER CURIAM.

Defendant was convicted by jury of second degree arson. Execution of sentence was suspended and defendant was placed on probation for five years on condition he serve one year in the Multnomah County jail. He appeals on the principal ground that within the terms and meaning of the Sixth Amendment to the United States Constitution and Art. I, § 11 of the Oregon Constitution the jury panel was not made up of a valid cross-section of the community.

The mechanics of jury selection in Multnomah County were shown to be as follows: 5,000 names were chosen at random by a computer from a list of registered voters at the beginning of the year and each month 500 were called at random from that number. The testimony was that many prospective jurors of that 500 were excused for reason of statutory exemption or disqualification, economic hardship or other good cause, and within that number 15 to 20 Negroes generally asked to be excused. In a typical month, 4 or 5 of 170 remaining jurors would be Negro. Evidence was introduced to show that there were approximately 550,000 persons residing in Multnomah County of whom 20,000 to 21,000 were Negro. One Negro served as a juror in this case. Converted to percentages, the above numbers indicated that Negroes comprised 3.8 per cent (21/550) of the population of Multnomah County, 4.4 per cent (22/500) of the 500 monthly call, 2.35 per cent (4/170) of the 170 jurors who actually served, and 8 1/3 per cent (1/12) of the jurors who judged this case.

Defendant claims that the process of jury selection in Multnomah County, as it affects the selection of Negroes for jury service, violated his right as a Negro to equal protection of law. In subsequent as-

signments of error he claims denial of equal protection because the educational level of the eligible jurors is below that of the general population, because more women than men serve and because he is entitled to an all-Negro jury.

In order to prevail defendant must prove systematic exclusion of a cognizable group. A showing that the proportion of Negroes on the jury is somewhat less than their proportion of the general population is insufficient in itself to satisfy that burden. *Swain v. Alabama*, 380 US 202, 85 S Ct 824, 13 L Ed 2d 759 (1965). The Supreme Court in *Swain* refused to find a denial of equal protection where 26 per cent of the county population eligible for jury selection was Negro, but jury commissioners normally chose panels with only 10 to 15 per cent Negro membership. There was no evidence of intentional exclusion. The Supreme Court held in language which is applicable to the case at bar that

"* * * a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. * * * Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. 'Obviously the number of races and nationalities appearing in the ancestry of our citizens would make it impossible to meet a requirement of proportional representation. Similarly, since there can be no exclusion of Negroes as a race and no discrimination because of color, proportional limitation is not permissible.' * * * We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%. * * * There is no

evidence that the commissioners applied different standards of qualifications to the Negro community than they did to the white community. * * * Undoubtedly the selection of prospective jurors was somewhat haphazard and little effort was made to ensure that all groups in the community were fully represented. But *an imperfect system is not equivalent to purposeful discrimination based on race.* We do not think that the burden of proof was carried by petitioner in this case." (Emphasis supplied.) 380 US at 208-209.

Random selection of jurors from voter registration lists has been held to be nondiscriminatory because the voters' rolls are open to all on a nondiscriminatory basis. Rejecting a challenge that an Eastern District of New York (Brooklyn) jury panel chosen from voters' lists was constitutionally invalid because it had only 2 or 3 Negroes on the 170-member panel, the Court of Appeals said in *United States v. Curry,* 358 F2d 904 (2d Cir 1966):

"* * * The method of selection appears designed neither to favor nor discriminate against any particular group. It is axiomatic at this late date that 'proportional representation' or any method of intentionally attempting to select jurors on the basis of racial, religious, economic or social grouping is not required by the Constitution and indeed would be an unworkable and repugnant policy. * * *" 358 F2d at 917.

So long as the voter registration procedures are not discriminatory—and there is no such claim in this case either as to race, education or sex—random selection from such lists is a constitutionally valid manner of jury selection. Those who freely choose not to register to vote, whatever their race, sex or national background or for whatever reason they may have, are not a cognizable group subjected to systematic ex-

clusion. *Gorin v. United States*, 313 F2d 641, 644 (1st Cir), *cert denied* 374 US 829, 83 S Ct 1870, 10 L Ed 2d 1052 (1963); *Simmons v. United States*, 406 F2d 456, 461-62 (5th Cir), *cert denied* 395 US 982, 89 S Ct 2144, 23 L Ed 2d 770 (1969); *United States v. Agueci*, 310 F2d 817 (2d Cir 1962), *cert denied* 372 US 959, 83 S Ct 1016, 10 L Ed 2d 12 (1963).

We have considered defendant's other assignments of error and find them to be without merit.

Affirmed.