Argued and submitted December 22, 1998, affirmed May 19, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# CLINTON CROCKER,
*Appellant.*

(96C20153; CA A97241)

982 P2d 45

David E. Groom, Public Defender, and Steven V. Humber, Deputy Public Defender, filed the brief for appellant.

Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

---

* Deits, C. J., *vice* Warren, P. J., retired.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals from two convictions for possession of a weapon by an inmate. ORS 166.275. On appeal, we affirm.

In October 1995, defendant committed the crimes underlying the convictions and the matters came to trial in February 1997. At trial, the prosecutor exercised his authority under subsection (1)(g) of Ballot Measure 40 and requested that the court exclude any prospective jurors who were not registered to vote or who had prior felony convictions. The trial court granted the prosecutor's request, and, as a result, it appears that four individuals out of 29 prospective jurors were excluded from the panel from which the 12-person jury was selected. Several months after defendant's trial, the 1997 Legislative Assembly enacted Senate Bill 936 which amended ORS 10.030 to conform to subsection (1)(g) of Ballot Measure 40. Or Laws 1997, ch 313, §§ 8, 9a and b.[1] Thereafter, Ballot Measure 40 was declared unconstitutional. *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998).

Defendant argues (1) that Senate Bill 936 cannot be applied to him because the state did not assert its application at trial;[2] (2) that Senate Bill 936 is "merely the 'implementing' language for Ballot Measure 40" and that because Ballot Measure 40 was unconstitutional, so too is Senate Bill 936;

---

[1] Section 9a provides that "until July 1, 1999," section 9b "shall operate in lieu" of ORS 10.030. Section 9b provides, in part:

"(1) Except as otherwise specifically provided by statute, the opportunity for jury service shall not be denied or limited on the basis of race, national origin, gender, age, religious belief, income, occupation or any other factor that discriminates against a cognizable group in this state.

"* * * * *

"(3)(a) Any person is eligible to act as a juror in a criminal trial, beginning on or after December 5, 1996, unless the person:

"* * * * *

"(E) Has been convicted of a felony or served a felony sentence within the prior 15 years; or

"(F) Is not registered to vote."

[2] Senate Bill 936 took effect on June 12, 1997. Section 38 provides that "[t]he remaining provisions of this Act [including section 9b] apply to all criminal actions pending or commenced on or after December 5, 1996 * * *."

and (3) that "[i]f this court for some reason finds Senate Bill 936 applicable * * * because it is independent of Ballot Measure 40, defendant submits Senate Bill 936 is itself also unconstitutional." In previous opinions in other cases, we have considered and rejected the same arguments that defendant makes regarding Senate Bill 936[3] except for the argument that the provisions of Senate Bill 936 limiting jury pools to registered voters and those persons not convicted of felonies are unconstitutional. Defendant argues that section 9b

> "violate[s] a criminal defendant's right to a jury drawn from a fair cross-section of the community under the Sixth and Fourteenth Amendments, under *Taylor v. Louisiana*, 419 US 522, 95 S Ct 692, 42 L Ed 2d 690 (1975); and that it is the state's burden to prove that the change in jury composition does not systematically and intentionally exclude any group, under *Holland v. Illinois*, 493 US 474, 110 S Ct 803, 107 L Ed 2d 905 (1990) and *Duren v. Missouri*, 439 US 357, 99 S Ct 664, 58 L Ed 2d 579 (1979)."

The cases cited above by defendant are not particularly instructive to the analysis of the specific issues before us, except that they stand for the general proposition that, to be constitutional, any restrictions on jury service under the Sixth Amendment must result in a cross-section of the community from which the names are drawn. For instance, *Taylor* involved a Louisiana statute and a provision of the Louisiana Constitution that systematically excluded women from jury panels. *Duren* examined the constitutionality of a statute that granted women, upon their request, an automatic exemption from jury service. *Holland* involved a prosecutor's peremptory challenge to exclude all potential jurors who were African-American from the petit jury for a white defendant. In *Taylor* and *Duren*, the court held that the statutes violated the Sixth Amendment's guarantee of a fair cross-section of the pool from which juries are selected. In *Holland*, the court held that the defendant was not deprived of his Sixth Amendment right to a "fair possibility" of a representative jury because the amendment requires only the inclusion of all cognizable groups in the community in the venire.

---

[3] *See State v. Cruz-Aguirre*, 158 Or App 15, 972 P2d 1206 (1999); *see also State v. Fugate*, 154 Or App 643, 963 P2d 686, *on recons* 156 Or App 609, 969 P2d 395 (1998), *rev allowed* 328 Or 275 (1999).

We turn first to the constitutionality of the requirement that the eligibility of persons to act as jurors in a criminal trial is conditioned on their registration as voters. ORS 10.215 requires the clerk of the court to prepare a master jury list from several sources, including "the most recent list of electors of the county." In *State v. Anderson*, 6 Or App 22, 485 P2d 446 (1971), *cert den sub nom Atkison v. Oregon*, 406 US 973 (1972), *appeal dismissed sub nom Anderson v. Oregon*, 410 US 920, 93 S Ct 1362, 35 L Ed 2d 582 (1973), the defendant contended that a jury pool chosen at random by a computer from a list of registered voters was not representative of a valid cross-section of the community. The defendant, an African-American, asserted that African-Americans comprised 3.8 percent of the inhabitants of the county, but only 2.35 percent of the 170 jurors that were in the jury pool. We held that in order to prevail, the defendant was required to prove a systematic exclusion of cognizable groups from the registered voter list and that the showing that the proportion of African-Americans in the jury panel was somewhat less than the proportion of the general population was insufficient in itself to satisfy the burden. We said:

> "So long as the voter registration procedures are not discriminatory—and there is no such claim in this case either as to race, education or sex—random selection from such lists is a constitutionally valid manner of jury selection. Those who freely choose not to register to vote, whatever their race, sex or national background or for whatever reason they may have, are not a cognizable group subjected to systematic exclusion." 6 Or App at 25-26.

Here, defendant does not contend that the voter registration procedures are discriminatory. The significance of our holding in *Anderson* to this case is that the requirement that jury pools be chosen from registered voter lists does not by itself offend the Sixth Amendment. We turn to the question of whether the fact that certain convicted felons and non-registered voters can be excluded from juries hearing criminal cases violates the Sixth Amendment.

In *Carter v. Jury Commission*, 396 US 320, 332-33, 90 S Ct 518, 24 L Ed 2d 549 (1970), the Supreme Court noted:

"It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age * * * and to those possessing good intelligence, sound judgment, and fair character. 'Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.' " (quoting *Brown v. Allen*, 344 US 443, 474, 73 S Ct 397, 97 L Ed 469 (1953)) (footnotes omitted).

Similarly, the Court upheld the provisions authorizing a jury commissioner to eliminate from grand jury service anyone who was not an "upright citizen." *Turner v. Fouche*, 396 US 346, 354, 90 S Ct 532, 24 L Ed 2d 567 (1970).

■   Defendant does not cite to us any case that holds that the exclusion of convicted felons from the jury panel violates the Sixth Amendment. At least one state has held expressly to the contrary. In *State v. Bojorques*, 111 Ariz 549, 535 P2d 6 (1975), the Arizona Supreme Court held that a jury pool selection process that required jurors to be electors and excluded convicted felons whose civil rights had not been restored from voting was not unconstitutional under the Sixth Amendment based on the language of *Carter*. In general, the cases that we have reviewed that have focused on what constitutes a cognizable group for purposes of the Sixth Amendment have found cognizable groups based on factors such as gender, race, religion and ethnic background. *See* Jane M. Draper, Annotation, *Validity of Requirement or Practice of Selecting Prospective Jurors Exclusively from List of Registered Voters*, 80 ALR 3d 869 (1977). In that light, the fact that prospective jurors have been convicted of felonies and/or are not registered voters does not logically make such persons a cognizable group for Sixth Amendment purposes. Those who are convicted of felonies freely chose to commit felonies and those who are not registered voters chose not to register. In sum, we discern no support for the proposition that a jury panel must include convicted felons and nonregistered voters in order to reflect a representative cross-section of the community. We conclude that they are not a cognizable

group for that purpose and that the restrictions placed on eligibility for jury service by section 9b do not violate the Sixth Amendment.

Affirmed.