514 December 10, 2025 No. 1056

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAFAEL GUSTAVO ALCON-AYALA,
aka Rafael Ayala Alcon, aka Rafael G Alcon-Ayala,
aka Rafael Alconayala, aka Rafael Alcon Gustavo Ayala,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR05973; A180288

Thomas M. Ryan, Judge.

Argued and submitted June 17, 2025.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission. Rafael Gustavo Alcon-Ayala filed the supplemental briefs *pro se*.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Remanded for resentencing; otherwise affirmed.

**O'CONNOR, J.**

Defendant appeals from a judgment imposing criminal convictions and a sentence. He raises challenges to his convictions and to the imposition of per diem fees as part of his sentence.[1] In total, defendant allegedly committed offenses against 12 victims. Defendant was convicted of eight counts of first-degree rape (Counts 1, 2, 4, 10, 19, 23, 24, and 26); one count of strangulation (Count 6); four counts of first-degree sexual abuse (Counts 12, 16, 28, and 30); and one count of attempted unlawful sexual penetration (Count 31).[2]

Defendant raises 15 assignments of error through counsel and another six assignments of error in a *pro se* supplemental brief. The state concedes the fifteenth assignment of error because it agrees that the trial court erred when it imposed per diem fees on Count 6 in the judgment without announcing the fees at sentencing. The state argues that we should affirm on all other assignments of error. For the reasons below, we reject all but one of defendant's assignments of error. On the fifteenth assignment of error, we accept the state's concession regarding the per diem fees and remand for resentencing.

## I.   BACKGROUND

The factual history for the counts at issue on appeal are reviewed in the analysis of the corresponding assignments of error. Pretrial, the parties agreed to divide the case

---

[1] Defendant was charged with 16 counts of first-degree rape; 12 counts of first-degree sexual abuse; one count of strangulation; one count of unlawful sexual penetration in the first-degree; one count of attempted unlawful sexual penetration in the first-degree; and four counts related to possession and delivery of oxycodone and methylenedioxymethamphetamine. Counts 1 - 5, 10, 13 - 15, 19, 20, and 23 - 27 were charges of rape in the first-degree (ORS 163.375); Counts 8, 9, 11, 12, 16 - 18, 21, 22, and 28 - 30 were charges of sexual abuse in the first-degree (ORS 163.427); Count 6 was a charge of strangulation (ORS 163.187); Count 7 was unlawful sexual penetration (ORS 163.411); Count 31 was attempted unlawful sexual penetration (ORS 163.411); and Counts 32 - 35 were the counts for possession and delivery of oxycodone and methylenedioxymethamphetamine (ORS 475.830; 475.834; 475.870; 475.874).

[2] Although the jury returned additional guilty verdicts on Counts 3, 5, 20, 25, 27, and 29, Count 3 was merged with Count 2; Count 5 was merged with Count 4; Count 20 was merged with Count 19; Count 25 was merged with Count 24; Count 27 was merged with Count 26; and Count 29 was merged with Count 28. Counts 7, 8, 9, 18, 32, 33, 34, and 35 were dismissed. Defendant was acquitted on Counts 11, 13, 14, 15, 17, 21, and 22.

into three trials. The first trial involved counts against five alleged victims. The second trial involved counts against five other alleged victims. The third trial involved counts against two additional alleged victims. The charges against C and M, which we will discuss in detail, were part of the first trial.

The charges in the first trial included seven charges for first-degree rape, two charges of first-degree sexual abuse, and one charge of strangulation. At the end of the state's case in chief, defendant submitted a *pro se* motion for judgment of acquittal (MJOA) in which he argued that the state failed to prove that each of the offenses occurred. The trial court reviewed the evidence with the parties to determine the sufficiency of the evidence. The trial court denied defendant's motion on all counts. The trial court noted that the charge of strangulation was very close, but the evidence viewed in the light most favorable to the state was sufficient to deny defendant's motion.

When instructing the jury, the trial court did not instruct the jurors that the state had to prove beyond a reasonable doubt that defendant knew the victims were incapable of consent. Defendant did not object or otherwise raise that issue with the trial court. The jury for the first trial found defendant guilty as charged.

## II.   ANALYSIS

A.  *Denial of MJOA on Rape in the First-Degree, Sexual Abuse in the First-Degree, and Strangulation*

Defendant's first five assignments of error challenge the trial court's denial of his motions for judgment of acquittal on two charges of first-degree rape, two charges of first-degree sexual abuse, and one charge of strangulation in the first trial. In reviewing the denial of an MJOA, we view the facts in the light most favorable to the state to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Turnidge (S059155)*, 359 Or 364, 366, 374 P3d 853 (2016). After review of the record, we affirm, for the reasons explained below.

1.  *First-degree rape and first-degree sexual abuse charges*

In June 2019, C went to a club with her roommate, Gomez, and her friends, Rosengrant, and Matthieu. When the club closed, a friend suggested that the group go to defendant's house where they could continue to drink. C became intoxicated and could not remember anything between approximately 2:00 a.m. and 11:00 a.m. the next morning.

C was stumbling and unable to speak coherently. Her friends took her to defendant's bed, where C fell asleep. Rosengrant testified that no one else was in defendant's bedroom, and the door was closed. Later, she saw defendant enter his bedroom and close the door behind him. Rosengrant tried to open the door, but it was locked. She asked others to help her open the door. Someone eventually unlocked the door from the inside. Rosengrant entered the bedroom. C was asleep and unresponsive at the bottom of the bed. Her dress was pulled up. Defendant was at the top of the bed and Rosengrant believed defendant was "fake" sleeping. C's friends picked her up and took her home.

The next morning, C had no recollection of sexual contact or sexual intercourse with defendant. Rosengrant told C that she was worried that defendant may have had sexual contact with C while she was passed out. C noticed that she had excessive discharge in her underwear. That indicated to C that something sexual had happened because she had noticed excessive discharge previously when she had sexual intercourse. C also felt pain in her genital and pelvic region.

A day or two later, C filed a police report and gave the police the clothing and underwear that she had been wearing that night at defendant's apartment. A forensic analysis of C's underwear found sperm cells that "matched" defendant's DNA profile. The analysis found epithelial cells that were very likely from C and defendant.

Defendant argues on appeal that the state did not meet its burden of proof with respect to the counts involving C. Defendant admits that the evidence shows that some sexual activity occurred between defendant and C but argues

that it was insufficient to show that defendant had sexual intercourse or sexual contact with C's vagina. According to defendant, the forensic scientists were not able to conclusively say how defendant's semen got into C's underwear and thus a juror could only speculate that defendant had intercourse with C. Defendant further argues that although C associated her vaginal discharge with sexual activity, there are other possible explanations for the discharge, and it does not prove that defendant had intercourse or any other sexual contact with C.

The state first argues that defendant failed to preserve the arguments that he raises on appeal. On the merits, the state argues that defendant's DNA mixed with C's DNA in C's underwear permits a juror to infer beyond a reasonable doubt that defendant had intercourse with C. The discharge that C experienced and the pain in her genital and pelvic area, taken together, also permit an inference beyond a reasonable doubt that C had intercourse or some sexual contact that night, the state argues.

At the outset, we conclude that defendant's arguments are preserved. During the argument to the trial court on the MJOA, defendant argued that C did not know what the alleged sexual contact was and thus the evidence was insufficient. The trial court analyzed the elements of each offense after hearing arguments from both parties and denied defendant's motion on those counts. Thus, the issues on appeal are preserved. *See State v. Arnold*, 302 Or App 765, 770, 462 P3d 753 (2020) (holding that when the policies underlying the preservation requirement are served, the argument is preserved).

Turning to the merits, under the theory of first-degree rape alleged in the two counts involving C, the state was required to prove beyond a reasonable doubt that defendant had sexual intercourse with C and C was "incapable of consent by reason of mental incapacitation" (Count 26) or "incapable of consent by reason of physical helplessness" (Count 27). ORS 163.375(1)(d). In this context, "'sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight; emission is not required." ORS 163.305(6).

Sexual abuse in the first degree, as charged in the counts involving C, required the state to prove beyond a reasonable doubt that defendant subjected C to sexual contact and that C was incapable of consent by reason of being mentally incapacitated (Count 28) or by reason of physical helplessness (Count 29). ORS 163.427(1)(a)(C). "Sexual contact" is "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(5).

Here, the parties' dispute on appeal requires us to determine whether the state's evidence was sufficient to permit a rational juror to infer beyond a reasonable doubt that defendant had sexual intercourse with C, for the first-degree rape charges, or to infer that defendant subjected C to sexual contact, for the first-degree sexual abuse charges.[3] The line between a permissible inference and impermissible speculation is "sometimes faint." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). If the inference to be drawn requires too great of an inferential leap or stacking of inferences to the point of speculation, then the evidence is insufficient to support the inference. *Id.* When there are multiple possible inferences and at least one inference permits the jury to find the element of an offense beyond a reasonable doubt, the factfinder may choose between the competing inferences, and a court properly denies an MJOA. *State v. Hedgpeth*, 365 Or 724, 733, 452 P3d 948 (2019) ("When a court considers a motion for judgment of acquittal, the question is whether the factfinder reasonably could infer that a particular fact flows from other proven facts, not whether the inference *necessarily* flows from the proven facts.").

In this case, the physical and testimonial evidence, viewed in the light most favorable to the state, permits a juror to draw an inference beyond a reasonable doubt that defendant had sexual intercourse with C, as required for first-degree rape. The state presented evidence that C's friends had placed her on defendant's bed after she passed out during a night of partying, defendant entered his bedroom, and

---

[3] Defendant does not dispute the sufficiency of the evidence on the other elements.

when C's friends tried to enter to check on her, the door was locked. A juror could infer that the door was locked because defendant locked the door and that defendant and C were the only two people in the room. When someone unlocked the door, C's friends entered and found C still passed out but with her dress pulled up. C's friends found defendant pretending to be asleep on the bed. A juror could further infer, beyond a reasonable doubt, that defendant had pulled up C's dress and had done something that he wanted to hide from others based on the circumstances the witnesses described.

C testified that the next day she experienced vaginal and pelvic pain as well as excessive vaginal discharge, which she associated with sexual intercourse or sexual activity. A forensic analysis of C's underwear showed defendant's semen on the crotch panel and defendant's epithelial cells with C's epithelial cells also in the crotch panel. That physical evidence, viewed in the light most favorable to the state, permits a juror to infer, beyond a reasonable doubt, that defendant had sexual intercourse with C and that defendant had sexual contact with C while she was unconscious in defendant's bedroom. *See State v. Ofodrinwa*, 241 Or App 214, 224, 250 P3d 405 (2011), *aff'd*, 353 Or 507, 300 P3d 154 (2013) (physical evidence indicative of sexual intercourse and evidence that the defendant was specifically attracted to the victim was enough to support a reasonable inference that the defendant was guilty of second-degree sexual abuse).

Defendant argues that there are other explanations for how his DNA came to be in C's underwear. That may be. But a trial court may not grant judgment of acquittal when some inferences from the evidence lead to a not-guilty verdict while other permissible inferences from the evidence lead to a guilty verdict. *Hedgpeth*, 365 Or at 733. The jury decides which inference to draw in those circumstances. *See State v. Derry*, 200 Or App 587, 591, 116 P3d 248 (2005), *rev den*, 340 Or 34 (2006). Here, the evidence, viewed in the light most favorable to the state, is sufficient for a reasonable juror to find beyond a reasonable doubt that defendant had sexual intercourse and sexual contact with C when she was incapable of consenting. Thus, the trial court did not err in denying defendant's MJOA.

2.   *Strangulation*

The state charged defendant in Count 6 with strangulation, ORS 163.187(1)(a),[4] committed against M. In July 2019, M went to a concert at the Moda Center in Portland with her friend, Thompson. After the concert, Thompson and M went to defendant's house. M knew defendant but did not consider him a friend. Thompson did not believe M was intoxicated when they entered defendant's apartment. The three of them walked to a nearby club where they stayed for approximately two hours. They left together and returned to defendant's apartment. M felt "fuzzy."

The next thing M remembered was waking up in defendant's apartment in the morning. Her dress was pulled up and she was bleeding from her ear.

Defendant drove M to Thompson's house because Thompson had gone home the night before. M asked Thompson what happened the night before, but Thompson did not know because she could not remember. M went home. M's roommate told her that she looked pretty beat up and that something was not right. M's family came over and told her that she needed to go to the hospital.

M noticed multiple marks on her body that had not been there before the concert. Her neck was bruised, she had pain on the right side of her ear and pain on both sides of her neck. M's neck pain was worse on the left side. She rated the pain a 10 out of 10, and the pain lasted about two weeks.

M went to the hospital. A nurse conducted a sexual assault examination and a strangulation assessment. The nurse reported that M had experienced symptoms associated with strangulation, including memory loss, headache, pain, tenderness, swelling, edema, combativeness, irritability, restlessness, uncontrolled shaking, hyperventilation, dyspnea, bleeding from her ear, and bruising. M wore a sling

---

[4] That statute provides in part:

"(1)  A person commits the crime of strangulation if the person knowingly impedes the normal breathing or circulation of the blood of another person by:

"(a)  Applying pressure on the throat, neck or chest of the other person[.]"

for a month as part of the treatment for the pain in the left side of her neck.

In defendant's fifth assignment of error, he argues that the trial court erred when it denied his MJOA on the count of strangulation. Specifically, he argues that the evidence was insufficient to establish that he actually impeded M's normal breathing or circulation of blood, as required by ORS 163.187(1)(a). Defendant contends that the state must prove that he caused the sustained constriction of M's arteries or veins, beyond just bruising on the surface of the skin that could result from momentary impact. According to defendant, the state did not present evidence that he applied force to M's neck in a manner that impeded normal breathing or the flow of blood to M's brain. Defendant further argues that, although M showed symptoms of strangulation, those symptoms could have been caused by other means such as an injury to the head or neck, or use of drugs and alcohol. Defendant does not contest the sufficiency of the evidence that he caused some injury to M's neck.

The state argues that the trial court did not err. The state asserts that the evidence is sufficient for a factfinder to reasonably infer that defendant applied force that impeded M's blood flow. The combination of signs and symptoms M presented were sufficient for the nurse examining M to notify the emergency room doctor of her findings and follow strangulation protocol.

A person commits the crime of strangulation if that person knowingly impedes the normal breathing or circulation of the blood of another by applying pressure on the throat, neck, or chest of the other person. ORS 163.187(1)(a). "The elements of strangulation require proof of engaging in a specific means (applying pressure on the throat or neck or blocking the nose or mouth) toward a specific end (impeding normal breathing or circulation)." *State v. Hendricks*, 273 Or App 1, 15, 359 P3d 294 (2015), *rev den*, 358 Or 794 (2016). The state must prove that the defendant knowingly impeded breathing or blood circulation. ORS 163.187(1).

Viewing the evidence in the light most favorable to the state, the evidence is sufficient to permit a juror to

infer beyond a reasonable doubt that defendant impeded M's breathing or circulation by applying force to her neck. M had visible bruising on her neck caused by damage to the blood vessels underneath the skin. M also had symptoms associated with strangulation, as reported by the nurse, including memory loss, bleeding, and bruising. M rated her neck pain as a 10 on a scale of 1 to 10. The extent of pain and stiffness in M's neck would permit a reasonable juror to conclude that someone applied more than momentary pressure to M's neck. None of those symptoms were present before M was left alone with defendant, and defendant appears to agree that a juror could infer beyond a reasonable doubt that he caused M's injuries.

Defendant argues that bruising alone is insufficient to prove that M's breathing was impaired. The evidence in this case, viewed in the light most favorable to the state, consists of more than bruising alone. The evidence was sufficient for a rational juror to find each element of strangulation beyond a reasonable doubt. The trial court did not err in denying defendant's MJOA on Count 6.

B.  *The "Knowing" Mental State Applied to the Element "Incapable of Consent"*

Defendant combines his sixth through fourteenth assignments of error and argues that the trial court erred when it did not instruct the jury that the jury had to find that defendant knew that the alleged victims were incapable of consent due to physical or mental helplessness on Counts 1, 2, 3, 4, 5, 26, 27, 28, and 29. Defendant acknowledges that he failed to preserve the argument and he requests plain-error review. As discussed above, the state charged the "incapable of consent" theories of first-degree rape, ORS 163.375(1)(d), and first-degree sexual abuse, ORS 163.427(1)(a)(C).

Defendant acknowledges that we have rejected similar arguments in *State v. Phelps*, 141 Or App 555, 558-59, 920 P2d 1098, *rev den*, 324 Or 306 (1996) and *State v. Woods*, 317 Or App 506, 519, 505 P3d 432, *rev den*, 370 Or 198 (2022), but he argues that both cases were decided wrongly and asks that we overrule both decisions.

The state argues that defendant did not meet his burden of showing that we should overrule *Phelps* and *Woods*. The trial court did not commit plain error, the state argues, by instructing the jury consistently with controlling case law.

We agree with the state. We are not persuaded that *Phelps* and *Woods* are plainly wrong. *See State v. Civil*, 283 Or App 395, 388 P3d 1185 (2017) (explaining when we will overrule our own precedent). Those cases control. The trial court did not commit plain error when it instructed the jury consistently with *Phelps* and *Woods*. Accordingly, we reject defendant's sixth through fourteenth assignments of error.

C.   *Imposition of Per Diem Fee*

In the portion of the judgment that imposes the sentence for Count 6, strangulation, the judgment provides that defendant "shall pay any required per diem fees." Defendant's fifteenth assignment of error challenges that provision, as it was not announced on the record at sentencing. He argues, relying on *State v. Lewis*, 236 Or App 49, 52, 234 P3d 152, *rev den*, 349 Or 172 (2010), that he did not need to object to preserve the error because the provision appeared for the first time in the judgment. The state agrees that defendant did not need to preserve the error, and it concedes that the court erred in imposing the fees without announcing it at sentencing, and that we should remand for resentencing. We accept that the state's concession as well taken. "A criminal defendant has the right to have their sentence announced in open court." *State v. Barr*, 331 Or App 242, 244, 545 P3d 772, *rev den*, 372 Or 720 (2024) (internal quotation omitted). A trial court's failure to do so is reversible error. *Id*. We therefore remand for resentencing on defendant's fifteenth assignment of error. *Id*. (remanding for resentencing where a requirement to pay per diem fees was not announced in open court at sentencing and appeared for the first time in the judgment).

D.   *Supplemental Assignments of Error*

In his first *pro se* supplemental assignment of error, defendant asserts that the composition of the jury pool violated the Equal Protection Clause of the Fourteenth Amendment

to the United States Constitution because potential jurors of the same race as defendant were excluded from the pool.[5] In his supplemental *pro se* brief, defendant identifies himself as Hispanic-American. Defendant requests plain-error review, if we conclude that the assignment of error is unpreserved. The state argues that we should affirm because the assignment of error is unpreserved and is not plain error.

The jury was empaneled without objection. After the court heard motions, defendant, *pro se*, told the court that he did not think "it's ethical not having minorities on the jury pool." The trial court responded that "we already have our jury picked[.]" When defendant renewed his concern at the outset of the second trial, the trial court told him that there was no record of the race of the members of the jury but noted defendant's comment. Assuming without deciding that defendant preserved the issue, we cannot conclude on this record that the trial court erred. Defendant failed to develop a record in the trial court that would permit us to evaluate the merits of this equal protection challenge on appeal. A defendant must show the "systematic exclusion of a cognizable group" in order to establish an equal protection violation based on the composition of the jury pool. *State v. Anderson*, 6 Or App 22, 23-24, 485 P2d 446 (1971), *cert den sub nom*, *Atkison v. Oregon*, 406 US 973 (1972), *appeal dismissed sub nom*, *Anderson v. Oregon*, 410 US 920 (1973). Here, the record does not show the racial or ethnic background of potential jurors, as the trial court noted below. Defendant cannot meet his burden to establish the equal protection challenge that he raises on appeal without that information. We thus reject defendant's first *pro se* assignment of error.

In his second *pro se* assignment of error, defendant argues that the trial court wrongly denied his motion to substitute counsel. Defendant twice moved for substitution of counsel: once before his first trial and once before his second trial. Defendant based his motions on complaints about counsel's representation and his filing of a bar complaint against counsel. We review a trial court's denial of a defendant's motion to substitute court-appointed counsel

---

[5] The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states "[no state shall] deny to any person within its jurisdiction the equal protection of the laws." US Const, Amend XIV, § 1.

for an abuse of discretion. *State v. Olson*, 298 Or App 469, 472, 447 P3d 57 (2019). A defendant's loss of confidence with court-appointed counsel's approach to trial strategy does not require a trial court to substitute one court-appointed lawyer for another. *State v. Funrue*, 339 Or App 427, 432, 568 P3d 1023 (2025). The fact that a defendant filed a bar complaint against court-appointed counsel does not, by itself, require a trial court to grant a motion for substitution of counsel. *State v. Taylor*, 207 Or App 649, 665, 142 P3d 1093 (2006), *rev den*, 342 Or 299 (2007). We have reviewed the record, and we conclude that defendant's complaints about his counsel amounted to defendant's loss of confidence in his lawyer's trial strategy. Nevertheless, the trial court was not required to appoint new counsel for that reason and the trial court did not abuse its discretion when it denied defendant's motions for substitution of counsel.

Defendant's third *pro se* assignment of error is that the state improperly withheld potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). Defendant argues that the state had possession of defendant's cellphone data which included videos that could possibly have impeached witness testimony. Defendant claims that despite multiple requests, he did not receive that data. The state responds that during oral argument on discovery issues in the trial court, defense counsel told the trial court that she had all of the discovery that defendant was entitled to, including the data from defendant's phone. The trial court nonetheless issued an order directing the parties to comply with all discovery obligations. Defendant told the trial court that he was satisfied with that order. We reject defendant's argument on appeal because there is no indication in the record that the state failed to disclose any material evidence in its possession.

In his fourth *pro se* assignment of error, defendant argues that the trial court erred when it allowed the state to amend the indictment with respect to the dates of the incident involving victim B, while the trial was in progress. The indictment originally alleged that the crimes committed against B occurred in 2011. B testified that she was 21 when the crime was committed. However, B was not 21 in 2011,

she was 20. Witnesses that were with B testified that the crime occurred in 2012 or 2013. Defendant raised the question as to when the crime occurred in an MJOA. The state then moved to amend the indictment and told the trial court that the variance between testimony and the date alleged on the indictment was not a material element as long as it is still within the statute of limitations and does not prejudice the defendant. The court granted the state's motion to amend the dates on the indictment after determining that the dates were not a material element of the crime.

Defendant argues that changing the dates prejudiced him in that he was not adequately able to prepare a defense based on the wrong date in the indictment. The state argues that the date on the indictment is not a material element to either of the charges and that defense counsel was aware of the variance because it appeared on the grand jury transcript.

Unless the statutes defining a crime include a time requirement, it is generally not an essential element. *State v. Presley*, 175 Or App 439, 444, 28 P3d 1238 (2001). Our case law shows that we have permitted time variances in cases of sexual abuse and rape. *See State v. Daugaard*, 142 Or App 278, 283, 921 P2d 975 (1996); *State v. Baldeagle*, 154 Or App 234, 238, 961 P2d 264 (1998) (holding that time is not a material element of the crime of sexual abuse); *State v. Milbradt*, 305 Or 621, 623, 756 P2d 620 (1988) (holding that time is not a material element of rape or sexual abuse). Because the sexual abuse and rape statutes do not specify a time requirement, and defense counsel acknowledged that she had received the grand jury transcript that included the variance, defendant was not prejudiced when the trial court allowed the state to amend the indictment.

In his fifth *pro se* assignment, defendant contends that the trial court erred in denying his motion to sever the second trial. The severance statute provides that "If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires." ORS 132.560(3).

Defendant moved to sever the counts in the indictment into 12 separate trials. The trial court proposed dividing the case into three separate trials, as a compromise. Defendant and the state agreed. Defendant told the trial court that he would waive his right to appeal severance and that he was entering into the agreement freely and voluntarily. The trial court issued an order that provided that the first trial would involve the charges relating to five victims, the second trial would involve the charges relating to five other victims, and the third trial would involve charges relating to the remaining two victims.

Before the start of the second trial, defendant filed a *pro se* motion to sever. The trial court heard argument and denied the motion. The trial court ruled that the crimes were of the same or similar character, and "to a limited extent could arguably be said to constitute a common scheme or plan"; that no substantial prejudice had been shown to justify severance; and that the crimes were pleaded with a level of specificity that the jury could adequately consider each charge on its own.

"[A] party seeking severance under ORS 132.560(3) must 'identify a case-specific theory of substantial prejudice.'" *State v. Hernandez-Esteban*, 374 Or 300, 302, 577 P3d 761 (2025).[6] "[W]hen a defendant makes the requisite showing of substantial prejudice, a trial court is required to craft *some* remedy[.]" *Id.* (emphasis in original). Whether the facts stated in the motion, supported by the record, show the existence of substantial prejudice is reviewed for legal error and whether the trial court granted appropriate relief is reviewed for abuse of discretion. *Id.* at 314-15.

Here, defendant did not make the requisite showing of case-specific substantial prejudice in support of his second motion to sever. The trial court did not err when it denied that motion.

Defendant's final *pro se* assignment of error is that the trial court wrongly denied his motion to dismiss Counts

---

[6] The Supreme Court issued *Hernandez-Esteban* after oral argument in this case. We apply the rule from that case, consistent with our obligation to evaluate assignments of error based on the law in effect when we decide the appeal. *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003).

10 - 17, 19 - 23, and 25 as "multiplicitous."[7] Defendant argues that he was charged with multiple crimes based on singular incidents under multiple theories. Defendant argues that that violated double jeopardy protections under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. The state argues that the charges were pleaded sufficiently under Oregon law and that when defendant was found guilty of multiple counts for a single act involving a single victim, those guilty verdicts were properly merged. We agree. Defendant's state and federal protections against double jeopardy were not violated. Thus, the trial court did not err.

## III.   CONCLUSION

We accept the state's concession that the trial court erred when it imposed per diem fees on Count 6 that were not announced in open court and appeared for the first time in the judgment. We therefore remand for resentencing. We otherwise reject defendant's remaining assignments of error.

Remanded for resentencing; otherwise affirmed.

---

[7] Defendant filed two *pro se* Motions to Dismiss Indictment for Multiplicity. In the first motion, defendant moved to dismiss Counts 3, 5, and 27 - 29 as multiplicitous. In his second *pro se* Motion to Dismiss Indictment for Multiplicity, defendant moved to dismiss Counts 10 - 17, and 20 - 25 as multiplicitous. Defendant's reply brief states, "Counts 10 - 12, 13 - 15, 16, 17, 19 - 23, 25 are all multiplicitous."